# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| KURT KIRCHWEHM and ROSELIA CONTRERAS, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>BISCO INDUSTRIES, INC.,<br><br>    Defendant. | Case No. 1:22-cv-04398<br><br>Judge Steven C. Seeger<br><br>Magistrate Judge Susan E. Cox |

## PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION AND FLSA COLLECTIVE SETTLEMENT

Plaintiffs, Kurt Kirchwehm and Roselia Contreras ("Named Plaintiffs"), on behalf of themselves and 31 other Class Members (collectively "Plaintiffs"), by and through their attorneys, Caffarelli & Associates Ltd., and without objection from Defendant Bisco Industries, Inc. ("Defendant" or "Bisco") to the relief requested herein, move for final approval of the class and FLSA collective action settlement reached by the Parties through arms-length negotiations.[1] Per the Settlement Agreement, Class Members will receive payment of their alleged unpaid overtime wages, an equal amount in liquidated damages, plus a *pro rata* distribution attributable to IMWL statutory damages. This is an outstanding result, particularly in view of the risks and delays involved in continuing to litigate the merits of these claims. Pursuant to the Court's preliminary approval order (D.E. 43), Class Counsel sent notice to the Class Members on September 19, 2023. Of the Class Members, zero objected and only one individual opted out. The positive reaction from Class Members underscores the value the Class places on the Settlement obtained. For the reasons set forth below, the Settlement meets the standards for final approval, and should therefore be approved.

---

[1] Capitalized terms not defined herein shall have the meaning set forth in the Settlement Agreement and Release ("Settlement Agreement") attached as **Exhibit A**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Plaintiffs' Claims

Named Plaintiffs are former employees of Defendant. On August 18, 2022, Named Plaintiffs filed a hybrid class and collective action complaint alleging that Defendant violated the Fair Labor Standards Act ("FLSA") and Illinois Minimum Wage Law ("IMWL") by failing to pay them and similarly situated employees for all overtime hours worked and by failing to pay the correct overtime rate for all overtime hours worked. (D.E. 1). Kurt Kirchwehm worked in Bisco's Illinois facility as a Warehouse Assistant Manager from on or about October 19, 2020 through on or about May 16, 2022. *Id.* Plaintiffs alleged that most of Mr. Kirchwehm's time was spent performing non-managerial work and that he was, therefore, misclassified as "exempt" from the maximum hours provisions of the FLSA and IMWL.

Like Kirchwehm, Roselia Contreras also worked for Defendant in its Illinois facility. *Id.* Ms. Contreras was employed as a Warehouse Associate from November 2020 through on or about April 29, 2022. *Id.* Plaintiffs alleged that Ms. Contreras, like all other Warehouse Associates, regularly worked past her scheduled end times, along with extra hours for assigned "special projects." *Id.* Plaintiffs alleged that they – along with all other Warehouse Associates and Assistant Managers – were never paid at the statutory overtime rate. *Id.* Plaintiffs sought to recover unpaid overtime wages, liquidated damages, IMWL statutory damages, attorneys' fees, and litigation costs. *Id.*

Defendant denies the allegations in the lawsuit and denies that it violated the FLSA, IMWL, or any other law. (D.E. 12). In its Answer, Defendant raised twenty affirmative and other defenses, including, but not limited to, that Plaintiffs and any current or former employees alleged to be similarly-situated were properly classified as exempt, Plaintiffs' claims are barred by the applicable statute of limitations, that Plaintiffs rarely, if ever, worked in excess of forty hours per

week, and that there are no current or former employees that are similarly-situated or otherwise eligible to participate in a class or collective action. *Id.*

The Parties chose to explore an early resolution rather than expending extensive resources on contentious litigation. In order to facilitate settlement discussions, Plaintiffs requested various documents and datasets relating to Plaintiffs' and putative class and collective action members' compensation, which Defendant provided. (D.E. 20). In addition to the Named Plaintiffs, Bisco identified 29 potential Class Members. Class Counsel thoroughly reviewed the data and records provided by Defendant, along with the Named Plaintiffs' records, and conducted multiple interviews of several witnesses/putative Class Members.

The pay records demonstrated that Bisco paid Class Members on a salary basis. Although the FLSA allows for a non-exempt employee to be paid on a salary basis, it is still necessary to determine his or her regular hourly rate in order to ascertain the correct overtime rate. The regular rate for a non-exempt salaried employee is found by dividing his weekly salary by the number of hours the salary was intended to compensate. *See* 29 CFR 778.113. The regular rate for a non-exempt salaried employee is typically found by dividing the salary by the number of hours per week in order to calculate the overtime premium owed to the employee. *Zoltek v. Safelite Glass Corp.,* 884 F. Supp. 283 (N.D. Ill. 1995). To that, Class Counsel conducted a line-by-line analysis of the wage and hour records in order to assess potential damages. Class Counsel constructed day-by-day calculations for each individual Class Member to find his or her actual hours of work. Then, Class Counsel made week-by-week calculations for each individual Class Member, comparing pay and time records, to calculate their alleged overtime rates of pay per week, the amounts alleged to be owed in unpaid overtime per week, and all claimed statutory damages based upon the amounts of allegedly unpaid overtime wages.

**B.     The Proposed Settlement**

Following these extensive analyses, after months of negotiations, and through a settlement conference held with Judge Cox, the Parties reached an agreement on all material terms that they believe represents a full and fair resolution of the claims in light of all possible defenses and other barriers to a full recovery on the merits or to no recovery at all. By agreement of the parties, Plaintiffs sought, and Defendant did not object to, conditional certification of the Settlement Class. (D.E. 41). The Settlement Class includes:

> Current or former Warehouse Associates and Warehouse Assistant Managers of Bisco Industries, Inc.'s Glendale Heights, Illinois warehouse from August 18, 2019 to present.

Ex. B(1), Class Notice. As described below, the Class was expanded by agreement of the parties to include the site's Quality Inspector. Plaintiffs contend that the proposed settlement makes all Class Members whole because they will receive payment of overtime wages premised upon their actual hours of work and rates of pay, an equal amount in liquidated damages, and a portion of statutory damages provided by the IMWL. See Ex. A, Settlement Agreement. Specifically, the Settlement provides for: (1) the total gross amount of $53,500 in Settlement Payments and a $1,000 reserve fund to be applied to unknown claims and/or split among the Class Members *pro rata*; (2) an enhancement award of $5,000 to each of the two named Plaintiffs; and (3) up to $42,000 for Plaintiffs' counsel's approved attorneys' fees, costs, and expenses (including settlement administration expenses). A Class Member's failure to cash or deposit his/her distribution check within ninety (90) days will be redistributed, on a pro rata basis, to Class Members who have cashed their checks, or in the event any unclaimed funds are less than $500, to the Chicago Bar Foundation as a *cy pres* beneficiary. Importantly, this means that **no settlement funds** will revert back to Defendant

Members of the Settlement Class were not required to submit claims in order to receive

4

payment. All Class Members who did not exclude themselves will receive checks with their settlement payments. Class Members (excluding the Named Plaintiffs) may still elect not to waive their Released Federal Claims if they do not cash their settlement checks. Ex. A at pp. 12-13. The Named Plaintiffs agreed to provide a general release of all potential claims against Defendant, including but not limited to the FLSA and IMWL claims raised in this lawsuit. *Id*. Participating Class Members will release only alleged wage-related claims, including claims arising under FLSA and IMWL, against Bisco. Exs. A, B.

In exchange for their service on behalf of the Settlement Class and for signing a full release of all claims, the Settlement Agreement provides for enhancement awards of $5,000 each to be paid to the two named Plaintiffs, for a total allocation of $10,000. Per the Agreement, Class Counsel will also separately seek an award of their litigation fees and costs in the compromised amount of $42,000. The settlement is **not** a common fund; therefore, the service and/or fee awards will not diminish the amounts paid to Class Members.

C. **Administration and Notice**

In accordance with the terms of the Settlement Agreement and Preliminary Approval Order, Defendant provided Class Counsel with a list containing the names, last known addresses, and social security numbers. Exhibit B, Declaration of M. Cano. Prior to mailing, Class Counsel performed a search of the addresses using Accurint, a professional search engine used to locate individuals and verify identities. *Id*. On September 19, 2023, Class Counsel mailed Notice to 33 Class Members, including Named Plaintiffs. *Id*. Of those mailings, two Notices were returned as undelivered. A subsequent Accurint search provided newly updated addresses for these two Class Members. Class Counsel then issued re-mailed these Notices on September 28, 2023.

Additionally, during the Notice Period another Bisco employee contacted Class Counsel to request to join the Class. Upon further inspection, it was determined that he did not properly

meet the Class definition because he had worked for Bisco as a Quality Inspector – not a Warehouse Associate or Assistant Manager. However, by agreement of the parties and in accordance with the terms of the Settlement Agreement (*see* Ex. A at p. 19) this individual was added as a Class Member. His purported damages were calculated using the same methods as applied to the rest of the Class for a total amount of $1,942.25. This amount will be paid in part ($1,038.87) from the Reserve Fund, but Bisco agreed to contribute an additional $903.38 to the settlement as payment for these additional assessed damages.

Ultimately, only one person opted out. Ex. B. Once the Class Administrator remailed the notices, all were delivered. *Id*. Class Members were not required to submit claims in order to receive payment, which ensures that everyone who did not opt-out will receive a settlement check. Ex. A. Plaintiffs respectfully submit that the complete absence of objections, the single request for exclusion, and the additional request to join speaks to the fairness of the Settlement, the effectiveness of the Notices, and the ease and efficiency of the claim administration plan. This is a fair and reasonable result, particularly in view of the great risks and anticipated delays involved in litigating the merits and the difficulties inherent in pursuing these claims individually for a large percentage of Class Members. In accordance with the applicable requirements of settling FLSA and IMWL claims, Plaintiffs hereby seek – and Defendant does not oppose – the Court's approval of the settlement they reached in this matter.

## II.     FINAL APPROVAL IS WARRANTED

### A.  The Settlement Approval Process

As the Seventh Circuit has recognized, federal courts strongly favor and encourage settlements, particularly in collective actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See Air Line Stewards and Stewardesses Ass'n, Local 550 v. Trans World*

*Airlines, Inc.*, 630 F.2d 1164, 1166 (7th Cir. 1980) (federal courts look with great favor upon the voluntary resolution of litigation through settlement). Under Fed. R. Civ. P. 23(e)(1)(C), a court may approve a class action settlement if it is "fair, adequate, and reasonable, and not a product of collusion." Similarly, when considering a proposed FLSA settlement, the Court may "determine whether the proposed settlement is a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Butler v. Am. Cable & Tel., LLC*, No. 09-CV-5336, 2011 WL 4729789, at *9 n.9 (N.D. Ill. Oct. 6, 2011). Courts approve wage and hour settlements when they are reached as a result of contested litigation to resolve bona fide disputes. *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982). If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement. *Id.* at 1354; *Roberts v. Apple Sauce, Inc.*, No. 3:12-cv-830-TLS, 2014 WL 4804252 (N.D. Ind. Sept. 25, 2014).

The standard for approval of an FLSA settlement is lower than for a class action under Rule 23 because "FLSA collective actions do not implicate the same due process concerns as Rule 23 actions." *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 476 (S.D.N.Y. 2013). Approving a settlement requires a determination that the agreement reflects a "fair and reasonable resolution of a *bona fide* dispute over FLSA provisions." *Lynn's Food Stores*, 679 F.2d at 1355; *see also Sharpe v. APAC Customer Servs., Inc.*, No. 09-CV-329-WMC, 2010 WL 2698745, at *1 (W.D. Wis. June 16, 2010), amended in part, No. 09-CV-329-WMC, 2010 WL 2696507 (W.D. Wis. July 7, 2010). "Normally, a settlement is approved where it is the result of contentious arm's-length negotiations, which were undertaken in good faith by counsel . . . and serious questions of law and fact exist such that the value of an immediate recovery outweighs the mere possibility of further relief after protracted and expensive litigation." *Bligh v. Constr. Res. Of Indiana, Inc.*, No. 1:15-CV-00234-JD-SLC, 2016 WL 5724893, at *2 (N.D. Ind. Aug. 10, 2016) (internal citations omitted). Each proposed settlement must be viewed independently and through that lens.

7

In determining whether the resolution is fair and reasonable, courts may consider the following factors: (1) the complexity, expense, and likely duration of the litigation; (2) the stage of the proceeding and the amount of discovery completed; (3) the risks of establishing liability; (4) the risks of establishing damages; (5) the ability of the defendant to withstand a larger judgment; (6) the range of reasonableness of the settlement fund in light of the best possible recovery; and (7) the range of reasonableness of the settlement fund in light of all the risks of litigation. *See Paredes v. Monsanto Co.*, No. 4:15-CV-088 JD, 2016 WL 1555649, at *2 (N.D. Ind. Apr. 18, 2016). Also, where the settlement agreement provides for an award of attorneys' fees, the courts examine whether that amount is reasonable. *Small v. Richard Wolf Med. Instruments Corp.*, 264 F.3d 702, 707 (7th Cir. 2001). The traditional means for handling claims like those at issue here— individual litigation—would unduly tax the court system, require a large expenditure of public and private resources and, given the relatively small value of the claims of certain individual Class Members, would be impracticable. Thus, the proposed Settlement is the best vehicle for Class Members to receive relief to which they are entitled in a prompt and efficient manner.

**B. The Settlement is Fair, Reasonable, Adequate, and Should Be Approved**

A proposed class action settlement should be approved if the Court determines that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). "Federal courts naturally favor the settlement of class action litigation. Although such settlements must be approved by the district court, its inquiry is limited to the consideration of whether the proposed settlement is lawful, fair, reasonable, and adequate." *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996). In determining whether a settlement is "fair, reasonable, and adequate" at the final approval stage, the Court should consider the following factors: "the strength of plaintiffs' case compared to the amount of defendants' settlement offer, an assessment of the likely complexity, length and expense

of the litigation, an evaluation of the amount of opposition to settlement among affected parties, the opinion of competent counsel, and the stage of the proceedings and the amount of discovery completed at the time of settlement." *Id.*

In this case, an examination of these factors demonstrates that the Settlement is fair, reasonable, and adequate to the members of the class, and should be granted final approval by the Court. The Settlement was reached after comprehensive analysis by Class Counsel of the copious and detailed records provided by Defendant along with the records maintained by Plaintiffs, and after the parties' counsel weighed the strengths and weaknesses of the case throughout the course of lengthy negotiations. The negotiations took place at arms-length between attorneys experienced in the litigation, certification, trial and settlement of wage and hour class actions. Counsel for both parties are experienced in wage litigation, and understand the legal and factual issues involved in the case. As a result, the attorneys for the parties were well positioned to evaluate the strengths and weaknesses of their clients' positions, as well as the appropriate basis upon which to settle the claims. The amounts to be paid to the Class Members per the Settlement are significant, as described above. Class Counsel strongly endorses this Settlement. These facts weigh heavily in favor of final approval. *See McKinnie v. JP Morgan Chase Bank, N.A.*, 678 F. Supp. 2d. 806, 812 (E.D. Wis. 2009) (factors including that "counsel endorses the settlement and it was achieved after arms-length negotiations. . . suggest that the settlement is fair and merits final approval").

The Parties ensured that all Class Members who did nothing will receive a check, allowing for the easiest possible process. None of the Class Members filed an objection to the Settlement. The lack of objectors denotes support for the Settlement and strongly favors a finding that it is "fair and reasonable." *Am. Civil Liberties Union v. United States Gen. Servs. Admin.*, 235 F. Supp. 2d 816, 819 (N.D. Ill. 2002). Only one person opted out of participation. *See In re Southwest Airlines Voucher Litig.*, No. 11-cv-8176, 2013 WL 6406084 (N.D. Ill. Dec. 6, 2013) (finding that

the "low level of opposition ... supports the reasonableness of the settlement").

The proposed allocation is fair and reasonable because it is calculated based upon each Class Member's actual rate of pay and hours of work. *See Hens v. Clientlogic Operating Corp.*, No. 05-cv-381, 2010 WL 5490833, at *2 (W.D.N.Y. Dec. 21, 2010) (allocation formula based on plaintiffs' length of service). The distribution was determined by calculating the regular hourly rates of each individual (dividing each individual's weekly salary by the number of hours of work), then multiplying their overtime hours of work by the overtime premium, which Plaintiffs alleged had not been paid. *See* 29 CFR 778.113; *Zoltek v. Safelite Glass Corp.*, 884 F. Supp. 283 (N.D. Ill. 1995) (holding that the regular rate for a non-exempt salaried employee is found by dividing the salary by the number of hours per week in order to calculate the overtime premium owed to the employee).

Bisco made and maintained time records for the majority of the Covered Period, which the Parties utilized in order to ascertain each Class Members' actual hours of work. From August 18, 2019 through June 14, 2020, Bisco discovered that they did not have full time records for each Class Member. To account for this brief period without full records, potential damages were calculated from June 15, 2020 onward, then that data was extrapolated to calculate average damages for those Class Members without full records. The settlement also provides for an award of liquidated damages under the FLSA plus an award of IMWL statutory damages. Under the FLSA, if successful in their claims of untimely overtime payments, the Plaintiffs could recover liquidated damages. *See Dominici v. Bd. Of Educ. Of City of Chicago*, 881 F. Supp. 315 (N.D. Ill. 1995). However, if the Defendant can establish that it acted in good faith and upon reasonable grounds, which it believes it can do, it would remain within the Court's discretion to deny liquidated damages or refuse to award the full amount of liquidated damages. *Id.* As such, the final approval is justified and should be granted.

For settlement purposes only, Defendant does not deny or contest that the Class satisfies the numerosity, commonality, typicality, adequacy and superiority requirements of a Rule 23 class action. If the case were to proceed without settlement, it is Defendant's position that Plaintiffs would not be able to prove the requirements of Rule 23 were met for trial purposes due to a number of purported deficiencies including, according to Defendant, individualized inquiries concerning exemptions and claimed damages. However, because the parties are requesting certification of a settlement class, rather than a trial class, the proposed settlement, if approved, means that there would not be a trial and that the many intractable case-management problems that Defendant would argue would plague a trial class would not arise in this action. Thus, it is appropriate for this Court to find that the Rule 23 requirements have been met for settlement purposes. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619–20 (1997).

Moreover, in the opinion of Class Counsel, the terms of the proposed settlement are fair, a positive outcome, and provide reasonable compensation to the Class Members, especially after considering the potential length, risks, complexity, and available damages. Without settlement, this litigation would necessarily continue apace, greatly increasing both parties' expenses, as well as the investment of time by the parties and the Court. Although this case has been pending for a little over a year, the nature of the issues would likely result in several more years of litigation – even with an aggressive and closely managed discovery schedule. Instead of facing the uncertainty of a potential award (or loss) years from now, the Settlement allows Plaintiffs and the Class Members to receive immediate, certain, and sizeable relief. *See Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011) (citation omitted) ("Settlement allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation").

### III. THE PARTIES ARE RESOLVING A BONA FIDE FLSA & IMWL DISPUTE

Through the thorough review of Bisco's records, the parties were able to use information

11

obtained to make informed, specific assessments of their respective positions and educated evaluations of the value of the claims and the risks of proceeding with their cases through trial. Indeed, the parties have used such information to acknowledge that they would all incur substantial expenses with further litigation, including further class, merits, and expert discovery; class certification, FLSA decertification, and dispositive motions; and a potential trial. In sum, each party has been able to make informed decisions and determine the appropriate and reasonable amount to resolve the case in lieu of proceeding with the further time, expense, inconvenience, risk, and uncertainty of further litigation of the claims. *See Paredes*, 2016 WL 1555649, at *2 (approving settlement where parties acquired enough information to acknowledge risks and substantial expense with continued litigation and "hedg[ed] against those risks by agreeing to a settlement"). This settlement is an informed resolution, with the parties having obtained information indicating the issues in the case are complex, the risks Plaintiffs face in trying to prove liability, damages, and collective issues are significant, and the cost of further litigation would be substantial for both sides.

The crux of Plaintiffs' claims pertaining to Warehouse Assistant Managers rests upon the alleged misclassification of Plaintiffs as exempt employees and failure to pay overtime for all hours worked in excess of forty (40) per individual workweek. "The FLSA sets the standard workweek at 40 hours and requires employers to pay their non-exempt employees one and one-half times their regular rate of pay for any hours worked in excess of 40." *Urnikis-Negro v. Am. Fam. Prop. Servs.*, 616 F.3d 665, 666 (7th Cir. 2010) (citing 29 U.S.C. § 2017(a)(1)). For all Class Members, Plaintiffs allege that they were not exempt from overtime requirements and regularly worked in excess of forty (40) hours per individual workweek, but Defendant failed to properly compensate them for those overtime hours. Defendant denies that it paid Plaintiffs improperly or has any liability.

Plaintiffs' Counsel used the data (provided by Defendant) to calculate potential damages for these individuals within the Covered Period. Plaintiffs' Counsel first divided each individuals' salaries by the estimated number of hours worked to determine that individual's regular rate and corresponding overtime premium. Plaintiffs' Counsel then multiplied the number of overtime hours of work by the overtime premium. Plaintiffs' counsel added an equal amount in liquidated damages and calculated the IMWL interest. However, Defendant disputed Plaintiffs' methods of calculations because Named Plaintiffs were provided with a daily one-hour lunch break. Defendant contends that deducting one hour per day for lunch would show that Class Members are not owed overtime wages or that several may be owed *de minimus* amounts. Plaintiffs refute this position because, among other things, they assert that the available records are not true time records and do not capture all hours of work. In particular, the records show the log times into Defendant's computer system rather than true time records that would show entry and exit times. Plaintiffs contend that they were able to – and did – continue to perform work before and after logging in and out of the computer. To compromise this dispute, Plaintiffs adjusted their damages calculations by deducting thirty minutes per day. Defendant continues to deny that Class Members are owed any overtime wages.

In light of these disputes, Plaintiffs recognize that they still face significant hurdles and risks in establishing liability and damages in this case. Although the parties disagree on the merits of their respective positions, they each understand that the legal questions and the facts are in dispute and that settlement is favorable. *See Paredes*, 2016 WL 1555649, at *2 (recognizing that early settlement may be favored where parties have disputes on questions of law and fact relating to liability and damages). Thus, the settlement amount agreed upon between Plaintiffs and Defendant reflects a compromise by all parties after a "reasoned and counseled decision." *Id*.

## III. PLAINTIFFS' COUNSEL SEEK A COMPROMISED AMOUNT IN ATTORNEYS' FEES

The FLSA, 29 U.S.C. § 216(b), provides that the court "shall . . . allow a reasonable attorney's fee to be paid by the defendant [to a prevailing plaintiff], and the costs of the action." The IMWL, 820 ILL. COMP. STAT. 105/12(a), likewise entitles a plaintiff to recover his reasonable attorneys' fees and costs. The right to recover attorneys' fees and costs as a prevailing plaintiff under the FLSA and IMWL includes plaintiffs who favorably settle their claims. *Small v. Richard Wolf Med. Instruments Corp.*, 264 F.3d 702, 707 (7th Cir. 2001). Specifically, "a plaintiff who has settled a case is considered a prevailing party if she has achieved some success on the merits and can point to a resolution that has changed the legal relationship between herself and defendant." *Connolly v. Nat'l School Bus Serv., Inc.*, 177 F.3d 593, 595 (7th Cir. 1999), *citing Farrar v. Hobby*, 506 U.S. 103, 109-11(1992), *Hewitt v. Helms*, 482 U.S. 755, 760-61 (1987). Because the law was specifically designed to encourage attorneys to accept wage cases, even though the amount in dispute may be relatively small, the Seventh Circuit has "repeatedly rejected the notion that the fees must be calculated proportionally to damages." *Estate of Enoch ex rel. Enoch v. Tienor*, 570 F.3d 821, 823 (7th Cir. 2009).

Here, Plaintiffs' attorneys' fees and costs are fair and reasonable given the specific circumstances of this case. As described above, each Plaintiff will receive his or her full unpaid overtime wages, an equal amount in liquidated damages, plus an additional *pro rata* amount for IMWL damages. The attorneys' fee figure included in the Agreement is significantly reduced from Plaintiff's actual attorneys' fee lodestar. Moreover, Class Counsel here negotiated a separate award of fees, which does not impact the amount Class Members will receive in settlement payments.

"The purpose of a fee shifting statute, which is to enable smaller claims to be litigated, would be thwarted if attorneys' fees had to be strictly proportional to the amount recovered."

*Dominguez*, 897 F.Supp.2d at 687 (citing *Tuf Racing Prods., Inc. v. Am. Suzuki Motor Corp.*, 223 F.3d 585, 592 (7th Cir. 2000)). Due to the nature of the claims at issue, each Plaintiff alone does not bear substantial damages. Yet, calculating and proving any of Plaintiffs' claims requires a substantial amount of information, time, and effort. As such, it was through the ability of Plaintiffs to join together through the collective action that 34 individuals will now obtain relief. However, the increased number of Plaintiffs also expanded the amount of data and the amount of time expended by Class Counsel to review documents and calculate damages for the group. In addition, Class Counsel administered notice in house. As a result, Class Counsel has incurred $782.50 in costs and, as of the date of this Motion, $59,148.75 in attorneys' fees. For the reasons identified herein and more specifically in the Fee Motion, requested attorneys' fees and costs in the total amount of $42,000, which includes litigation costs in the amount of $782.25 in costs, should be awarded.

## IV. CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that the Court enter an Order granting final approval of the Settlement, including all of the relief requested herein and in the proposed final approval order. A copy of the proposed final approval order is attached as Exhibit C and will also be emailed to Proposed_Order_Seeger@ilnd.uscourts.gov contemporaneously with this filing.

| | |
|---|---|
| Dated: November 17, 2023 | Respectfully submitted,<br>KURT KIRCHWEHM and ROSELIA |
| Alejandro Caffarelli, #6239078<br>Alexis D. Martin, #6309619<br>Caffarelli & Associates Ltd.<br>224 S. Michigan Ave., Ste. 300<br>Chicago, Illinois 60604<br>Tel. (312) 763-6880<br>acaffarelli@caffarelli.com<br>amartin@caffarelli.com | CONTRERAS, individually and on behalf of all others similarly situated,<br><br>By: /s/ Alexis D. Martin<br>Attorney for the Plaintiffs |

**CERTIFICATE OF SERVICE**

The undersigned, an attorney, hereby certifies that she caused a true and correct copy of the foregoing document to be filed electronically via the Court's CM/ECF system. Notice of this filing will be sent to all counsel of record by operation of the Court's CM/ECF system. Parties may access this filing through the Court's CM/ECF system.

/s/ *Alexis D. Martin*
One of Plaintiffs' Attorneys